No. 23-1361

IN THE UNITED STATES COURT OF
APPEALS FOR THE FIRST CIRCUIT

PUBLIC INTEREST LEGAL
FOUNDATION, INC.,
*Plaintiff-Appellee*,

v.

SHENNA BELLOWS, IN HER OFFICIAL
CAPACITY AS THE SECRETARY OF STATE
FOR THE STATE OF MAINE,
*Defendant-Appellant.*

On Appeal from the United States District Court
for the District of Maine
Case No. 1:20-cv-00061-GZS
The Honorable Judge George Z. Singal

**BRIEF OF *AMICUS CURIAE* JUDICIAL WATCH, INC. IN
SUPPORT OF PLAINTIFF-APPELLEE AND AFFIRMANCE**

Michael Bekesha
  *Counsel of Record*
Eric W. Lee
**JUDICIAL WATCH, INC.**
425 Third Street SW
Suite 800
Washington, D.C. 20024
(202) 646-5172

*Counsel for Amicus Curiae*

Date: July 26, 2023

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1, *amicus curiae* Judicial Watch, Inc. states that it has no parent corporation and that no publicly held corporation owns 10% or more of its stock.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ iii

AUTHORITY AND INTERESTS OF THE *AMICUS CURIAE* ...........................1

SUMMARY OF THE ARGUMENT ........................................................3

ARGUMENT ........................................................................................5

I.     The Voter Registration List is Vital to Determining Compliance
with the NVRA ...........................................................................5

II.    The Full Voter Registration List is a Record Subject to Disclosure
under the NVRA ..........................................................................8

       A.     Records in the Voter Registration List Concern the
Implementation of Programs for Purposes of Ensuring
the Accuracy of the List ......................................................8

       B.     The Prohibitions Contained Within Exemption J Do Not
Prohibit Disclosure of the Registration List........................12

CONCLUSION .....................................................................................14

# TABLE OF AUTHORITIES

**CASES** **PAGE**

*Baker v. Smith & Wesson, Inc.*, 40 F.4th 43 (1st Cir. 2022)....................................10

*Bellitto v. Snipes*, 2018 U.S. Dist. LEXIS 103617 (S.D. Fla. Mar. 30, 2018) ...... 8-9

*Bloomberg L.P. v. United States FDA*, 500 F. Supp. 2d 371 (S.D.N.Y. 2007).......10

*Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181 (2008)..................................4

*Goodyear Atomic Corp. v. Miller*, 486 U.S. 174 (1988) ...........................................9

*Husted v. A. Philip Randolph Inst.*, 138 S. Ct. 1833 (2018)................................5, 7

*Illinois Conservative Union v. Illinois*,
    2021 U.S. Dist. LEXIS 102543 (N.D. Ill. June 1, 2021) ..............................2

*Judicial Watch v. Lamone*, 399 F. Supp. 3d 425 (D. Md. 2019)..........................2, 8

*Judicial Watch, Inc. v. Lamone*, 455 F. Supp. 3d 209 (D. Md. 2020)...........9, 10, 12

*Nat'l Fed'n of the Blind v. FTC*, 420 F.3d 331 (4th Cir. 2005)..............................11

*Project Vote, Inc. v. Kemp*, 208 F. Supp. 3d 1320 (N.D. Ga. 2016) ..................9, 10

*Project Vote v. Long*, 682 F.3d 331 (4th Cir. 2012) .......................................*passim*

*Public Interest Legal Found. v. N.C. State Bd. of Elections*,
    996 F.3d 257 (4th Cir. 2021) ...................................................................9, 12

*True the Vote v. Hosemann*, 43 F. Supp. 3d 693 (S.D. Miss. 2014).........................8

**FEDERAL STATUTES**

52 U.S.C. § 20507(d) ..........................................................................................6, 7

52 U.S.C. § 20507(i) ......................................................................................*passim*

**STATE STATUTES**

21-A M.R.S.A. § 196-A ........................................................................13

O.C.G.A. § 50-18-72(a) ......................................................................10

**OTHER**

Merriam Webster's Collegiate Dictionary (11th ed. 2008) ....................................10

*New Judicial Watch Study Finds 353 U.S. Counties in 29 States*
      *with Voter Registration Rates Exceeding 100%*,
      Judicial Watch, October 16, 2020, available at
      https://www.judicialwatch.org/new-jw-study-voter-registration/ ..................5

The Pew Center on the States, *Inaccurate, Costly, and Inefficient:*
      *Evidence that America's Voter Registration System Needs*
      *an Upgrade*, February 2012, available at
      https://www.pewtrusts.org/~/media/legacy/uploadedfiles/pcs_
      assets/2012/pewupgradingvoterregistrationpdf.pdf ........................................5

R.J. Reinhart, *Faith in Elections in Relatively Short Supply in U.S.*,
      Feb. 13, 2020, available at https://news.gallup.com/poll/285608/faith-
      elections-relatively-short-supply.aspx ...........................................................6

iv

## AUTHORITY AND INTERESTS OF THE *AMICUS CURIAE*[1]

Judicial Watch is a non-partisan, public interest organization headquartered in Washington, DC.  Founded in 1994, Judicial Watch seeks to promote accountability, transparency and integrity in government and fidelity to the rule of law. In furtherance of these goals, Judicial Watch and its staff monitor and investigate government and other agencies nationwide through public records laws, such as the Freedom of Information Act, 5 U.S.C. § 552, and the public inspection provisions of the National Voter Registration Act ("NVRA"), 52 U.S.C. § 20507(i).

In 2012, Judicial Watch began its election integrity work, primarily enforcing the integrity provisions of the NVRA through the NVRA's private right of action. Since that time, Judicial Watch has obtained numerous state and county settlement agreements or consent decrees that brought jurisdictions from California to Kentucky into compliance with Section 8 of the NVRA. *See Judicial Watch v. Grimes*, No. 17-94 (E.D. Ky. 2017) (ECF No. 39) (Consent Decree entered against the Commonwealth of Kentucky to enforce the NVRA); *Judicial Watch v. Logan*, No. 17-8948 (C.D. Cal. 2017) (settlement with Los Angeles County and the State of California to settle alleged NVRA violations); *Judicial Watch v. Griswold*, No. 20-

---

[1] Judicial Watch states that no counsel for a party to this case authored this brief in whole or in part; and no person or entity, other than *amicus curiae* and its counsel, made a monetary contribution intended to fund the preparation and submission of this brief. Judicial Watch obtained consent from all parties prior to the filing of this brief.

2992 (Colorado NVRA settlement); *Judicial Watch v. Pennsylvania Sec. of State*, No. 20-708 (M.D. Pa. 2020) (Pennsylvania NVRA settlement).

In the last ten years, no organization public or private has obtained more statewide settlement agreements or consent decrees against chief state election officials for violations of the NVRA. As part of its list maintenance enforcement efforts, Judicial Watch also routinely requests public records of voter registration activities in various states under Section 8(i) of the NVRA, and has sued on its own behalf and on behalf of others to enforce it. *Judicial Watch v. Lamone*, 399 F. Supp. 3d 425 (D. Md. 2019); *Illinois Conservative Union v. Illinois*, 2021 U.S. Dist. LEXIS 102543 (N.D. Ill. June 1, 2021).

In Judicial Watch's NVRA requests, the statewide voter registration list is almost always the first record requested. Judicial Watch uses the public inspection provision of the NVRA, along with data from the Election Assistance Commission and the U.S. Census Bureau, to determine whether state governmental officials are ensuring that their voter registration lists are current and accurate, and, if necessary, sues to enforce the NVRA. "Organizations such as Judicial Watch … have the resources and expertise that few individuals can marshal. By excluding these organizations from access to the voter registration lists, the State law undermines Section 8(i)'s efficacy." *Judicial Watch*, 399 F. Supp. 3d at 445. Adopting Appellant's position that the list is not subject to disclosure under the NVRA would

substantially frustrate Judicial Watch's efforts to determine the accuracy of the registration list and ensure that jurisdictions are complying with the list maintenance provisions of the NVRA, thereby undermining the purpose of the public disclosure provision.

For the foregoing reasons, Judicial Watch respectfully requests that this Court affirm the lower court decision that the Maine voter registration list is subject to disclosure under the NVRA.

## SUMMARY OF THE ARGUMENT

The public disclosure provision of the NVRA embodies Congress' intent that Americans' right to vote "must not be sacrificed to administrative chicanery, oversights, or inefficiencies." *Project Vote v. Long*, 682 F.3d 331, 335 (4th Cir. 2012). The NVRA's public disclosure provisions mandates that "State officials labor under a duty of accountability to the public in ensuring that voter lists include eligible voters and exclude ineligible ones in the most accurate manner possible." *Id.* at 339. The NVRA provides an avenue for citizens to check that and to ensure that only eligible registrants remain on the rolls by providing the full voter registration list open to public inspection. "Without such transparency, public confidence in the essential workings of democracy will suffer." *Id.* "[P]ublic confidence in the integrity of the electoral process has independent significance,

because it encourage[s] citizen participation in the democratic process." *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 197 (2008).

Judicial Watch furthers the intention of Congress in passing the public disclosure provision by using it to request various records that concern programs to keep the voter registration list accurate and current. Among those records are the full voter registration list, complete with fields such as the voter's name, address, date of birth, voter registration status, and voting history. Judicial Watch also requests the list of those who received a confirmation notice and information concerning whether the voter responded to the notice. Judicial Watch uses this information, along with other records, to determine whether the voter registration list is accurate and current. If it is not, then Judicial Watch may send a notice-of-violation letter to the chief state election official of that state, alleging a failure to make reasonable efforts to remove ineligible voters by reason of change of address.

Prohibiting organizations such as Judicial Watch or Appellee from receiving the full voter registration list is an obstacle to NVRA enforcement and violates the plain text of the NVRA. Moreover, it would frustrate Congress' intent behind the integrity provision of the NVRA. To Judicial Watch's knowledge, every single court presented with this issue has found the voter registration list covered by the NVRA. This Court should reject Appellant's invitation for it to become the lone outlier.

**ARGUMENT**

## I.   The Voter Registration List is Vital to Determining Compliance with the NVRA.

"It has been estimated that 24 million voter registrations in the United States – about one in eight – are either invalid or significantly inaccurate." *Husted v. A. Philip Randolph Inst.*, 138 S. Ct. 1833, 1838 (2018) (citing Pew Center on the States, Election Initiatives Issue Brief (Feb. 2012)).[2] According to this same study, approximately "2.75 million people are said to be registered to vote in more than one State." *Id.* In 2020, Judicial Watch compared the total registration statistics in a subset of states to the most recent U.S. Census Bureau's American Community Survey and found that 353 counties had more registered voters than voting-age citizens.[3]

Americans have been losing faith in the integrity of their electoral system for years. The Gallup organization regularly conducts a poll that compares American attitudes with those of other countries. The poll asks respondents if they "have

---

[2] *See* The Pew Center on the States, *Inaccurate, Costly, and Inefficient: Evidence that America's Voter Registration System Needs an Upgrade*, February 2012, available at https://www.pewtrusts.org/~/media/legacy/uploadedfiles/pcs_assets/2012/pewupgradingvoterregistrationpdf.pdf.  Pew also found that more than 1.8 million deceased voters were still listed on registration lists. *See id.*

[3] *See New Judicial Watch Study Finds 353 U.S. Counties in 29 States with Voter Registration Rates Exceeding 100%*, Judicial Watch, October 16, 2020, available at https://www.judicialwatch.org/new-jw-study-voter-registration/.

confidence" in the "honesty of elections." In 2020, only 40% of Americans answered yes, while an astonishing 59% said no.[4] According to Gallup, the United States has "one of the worst ratings across the world's wealthiest democracies," with only Chile and Mexico reporting statistically lower ratings.[5] Gallup reports that "[m]ajorities of Americans have consistently lacked confidence in the honesty of elections every year since 2012."[6]

The integrity provisions of the NVRA are designed to improve confidence in elections, providing procedures for removing ineligible voters without compromising the registrations of eligible ones. Records contained within the voter registration list, such as a voter's registration status (active or inactive), and the basis for that status, are critical in determining compliance with list maintenance laws. As part of any program or activity to remove ineligible voters for change of residence, for example, the NVRA requires jurisdictions to send a forwardable postage pre-paid confirmation card to the registrant's last known address. *Id.*, § 20507(d)(1)-(2). If the registrant fails to respond to the notice, or the notice is returned as undeliverable, then the registrant is marked "inactive." Inactive registrants are still registered voters. If the inactive registrant fails to vote or otherwise update their voter

---

[4] R.J. Reinhart, *Faith in Elections in Relatively Short Supply in U.S.*, Feb. 13, 2020, available at https://news.gallup.com/poll/285608/faith-elections-relatively-short-supply.aspx.
[5] *Id*.
[6] *Id*.

registration for two federal elections, the inactive registration must be removed from the voter registration list. *Id.*, § 20507(d)(1)(B); *see also Husted*, 138 S. Ct. at 1841-42 (finding that federal law under the notice and waiting period makes removal mandatory).

As part of Judicial Watch's list maintenance enforcement, Judicial Watch regularly requests the full voter registration list, including fields indicating active and inactive status, and voting history for at least the last four general elections. Judicial Watch also requests the list of names and addresses of all registrants who have received a confirmation notice and information concerning whether the registrant responded to the notice. Judicial Watch compares both sets of lists to see if a jurisdiction is timely removing inactive registrants who have not voted or otherwise contacted election officials for two consecutive general federal elections. Judicial Watch also uses this data to verify and confirm that publicly reported data is reasonably accurate. We have, in fact, seen several instances where the publicly reported data is not accurate or where these lists conflict. Without either of these lists, it would be more difficult to determine a jurisdiction's compliance with the NVRA.

II.     **The Full Voter Registration List is a Record Subject to Disclosure under the NVRA.**

A.     **Records in the Voter Registration List Concern the Implementation of Programs for Purposes of Ensuring the Accuracy of the List.**

Courts have uniformly held that the voter registration list is a "record" "concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters," which is subject to disclosure under the NVRA. 52 U.S.C. § 20507(i)(1). The "process of creating, updating, and auditing registrations 'is a "program" … because it is carried out in the service of a specified end— maintenance of voter rolls—and it is an 'activity' because it is a particular task . . . of election employees.'" *Judicial Watch*, 399 F. Supp. 3d at 439 (quoting *Project Vote*, 682 F.3d at 335; 52 U.S.C. § 20507(i)). "[T]he voter registrations are clearly records" because "they contain the information on which … election officials rely to monitor, track, and determine voter eligibility." *Id. See also True the Vote v. Hosemann*, 43 F. Supp. 3d 693, 723 (S.D. Miss. 2014) (relying on the same reasoning, concluding that "the Voter Roll is a 'record' and is the 'official list[] of eligible voters' under" Section 8(i), because the "process of compiling, maintaining, and reviewing the voter roll is a program or activity … that ensures the official roll is … accurate and current."); *Bellitto v. Snipes*, No. 16-cv-61474- BLOOM/Valle, 2018 U.S. Dist. LEXIS 103617, at *13

8

(S.D. Fla. Mar. 30, 2018) ("election officials must provide full public access to all records related to their list maintenance activities, including their voter rolls").

Though the NVRA's public disclosure provision "is broad," it "does not encompass any relevant record from any source" and "must be read in conjunction with the various statutes enacted by Congress to protect the privacy of individuals and confidential information held by certain governmental agencies." *Public Interest Legal Found. v. N.C. State Bd. of Elections*, 996 F.3d 257, 264 (4th Cir. 2021) (citing *Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 184-85 (1988)). Records containing "uniquely sensitive information" even if it concerns programs and activities to ensure the accuracy of the voter registration list, may be properly withheld under an NVRA public disclosure request. *Id.* at 265 (citing *Project Vote*, 682 F.3d at 339) (finding Social Security Numbers of voter registration applicants may be the type of uniquely sensitive information that may be withheld). In determining whether a record is the type of uniquely sensitive information that is proper for withholding, courts will look to explicit privacy protections afforded in federal and state law. *See Judicial Watch, Inc. v. Lamone*, 455 F. Supp. 3d 209, 223-24 (D. Md. 2020) (citing *Project Vote, Inc. v. Kemp*, 208 F. Supp. 3d 1320, 1344 (N.D. Ga. 2016). In Georgia, for instance, state public records law mandated the withholding of certain information related to the voter's date of birth, which the court found persuasive in withholding birthdate information from a Section 8(i) request. *See Kemp*, 208 F.

9

Supp. 3d at 1345 (citing O.C.G.A. § 50-18-72(a)(20)(A)). Maryland, by contrast, had no such requirement, and the court there ordered the release of the records under Section 8(i). *Lamone*, 455 F. Supp. 3d at 224.

The plain meaning of the statutory language also supports the Appellee's position. Congress' "use of the word 'all' [as a modifier] suggests an expansive meaning because 'all' is a term of great breadth." *Project Vote*, 682 F.3d at 336 (citation and internal quotations omitted); *see Baker v. Smith & Wesson, Inc.*, 40 F.4th 43, 48 (1st Cir. 2022) (Courts "strive to interpret statutes to that each word in the statutory test has meaning, and interpret a statute's text in accordance with its ordinary, contemporary, and common meaning." (citations omitted)). "Concerning" is a similarly broad term. *See* Merriam Webster's Collegiate Dictionary (11th ed. 2008) ("Concern" includes "relate to," "be about," "bear on," "have an influence on," "INVOLVE"); *Bloomberg L.P. v. United States FDA*, 500 F. Supp. 2d 371, 377 n.3 (S.D.N.Y. 2007) (Local Rules define "concerning" as "relating to, referring to, describing, evidencing, or constituting"). In ordinary speech, records within the voter registration list (*e.g.*, name, address, date of birth, voting status, and voting history), "concern" – that is, they "relate to," "bear on," "influence," "involve," and "evidence" – all of the programs and activities that keep them up to date. Surely, a statute calling for disclosure of "all records concerning" programs and activities to keep the lists current includes the lists themselves. Indeed, it would be strange if this

were not so. It would be as if a statute requiring the disclosure of "all records concerning programs and activities for purposes of keeping tax returns accurate" were held not to include the tax returns themselves, or as if a statute referring to "all records concerning programs and activities to keep law firm billing records accurate" did not include those billing records. The primary records bearing on programs and activities to ensure the accuracy and currency of voter lists must be the voter lists themselves.

Contrary to Appellant's argument, *see* Appellant's Br. at 40-41, the fact that records available for inspection "shall include" the list of names and address of confirmation notice recipients "does not shield" other voter registration records "from Section 8(i)'s public disclosure mandate." *Project Vote*, 682 F.3d at 337. That is because "the term 'shall include' sets 'a floor, not a ceiling'" and "Courts have repeatedly indicated that 'shall include' is not equivalent to 'limited to.'" *Id*. (citing *Nat'l Fed'n of the Blind v. FTC*, 420 F.3d 331, 338 (4th Cir. 2005)).

Furthermore, the list of confirmation notice recipients, which must be disclosed under the express provisions of Section 8(i)(2), will necessarily be the same as the list of "inactive" registrants, since the only way a registrant would become "inactive" is by failure to respond to a confirmation notice under the NVRA. It would make little sense if the NVRA's public disclosure provision was read in a

way that would *only* require disclosure of the inactive voter registration list rather than the entire registered voter list, both active and inactive.

Here, the district court correctly concluded that the Maine voter file is a record subject to the disclosure provisions of the NVRA, adopting the reasoning of *Judicial Watch* and *Project Vote*. *See* Add. 29-30. As Appellee correctly explains in its brief, the voter registration list in Maine is simply a compilation or end result of the programs and activities that are conducted to ensure an accurate statewide registration list. Appellee Br. at 19-25. No court has adopted Appellant's argument here. Rather, all courts presented with this issue have found that the voter registration list is a record subject to disclosure under the NVRA. This Court should reject Appellant's argument.

**B.** **The Prohibitions Contained Within Exemption J Do Not Prohibit Disclosure of the Registration List.**

As mentioned previously, though the NVRA's public disclosure provision "is broad," it allows for redaction of "uniquely sensitive information." *Public Interest Legal Found.*, 996 F.3d at 264-265 (citation omitted). Courts will look to explicit privacy protections afforded in federal and state law to determine whether a record is "uniquely sensitive information." *See Judicial Watch*, 455 F. Supp. 3d at 223-24; *Project Vote*, 208 F. Supp. 3d at 1344; *Public Interest Legal Found.*, 996 F.3d at 264.

Appellant has not identified a single source of state or federal law that would allow withholding of the voter registration list at issue here. Indeed, Exemption J explicitly authorizes the disclosure of the information contained within the registration list to individuals and entities that are seeking to evaluate list maintenance compliance under state and federal law. *See* 21-A M.R.S.A. § 196-A(1)(J), A341 (SMF ¶ 54); Appellant Br. at 14. The only two restrictions under Exemption J are the user may not

> (1) Sell, transfer to another person or use the voter information or any part of the information for any purpose that is not directly related to evaluating the State's compliance with its voter list maintenance obligations; or
> (2) Cause the voter information or any part of the voter information that identifies, or that could be used with other information to identify, a specific voter, including but not limited to a voter's name, residence address or street address, to be made accessible by the general public on the Internet or through other means.

21-A M.R.S.A. § 196-A(1)(J). In other words, an individual or organization cannot sell or transfer information for any purpose outside of ensuring the State's compliance with the NVRA and may not cause to publicly disseminate voter registration to the general public. Neither of these restrictions would classify any information contained within the voter registration as "uniquely sensitive" for purposes of disclosure. Exemption J should not be read to prohibit disclosure of any "uniquely sensitive information."

## CONCLUSION

For the foregoing reasons, the district court's decision holding that the voter registration list is a record subject to disclosure under the NVRA should be affirmed.

Dated: July 26, 2023                          Respectfully submitted,


                                              Michael Bekesha
                                                 *Counsel of Record*
                                              Eric W. Lee
                                              **JUDICIAL WATCH, INC.**
                                              425 Third Street SW
                                              Suite 800
                                              Washington, D.C. 20024
                                              (202) 646-5172

                                              *Counsel for Amicus Curiae*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(B), I hereby certify that this brief is proportionally spaced, 14-point Times New Roman font. Pursuant to Federal Rule of Appellate Procedure 32(g)(1) and per Microsoft Word count, the brief is within the word limit at 3071 words excluding tables and certificates.

Dated:  July 26, 2023                                                    *s/ Michael Bekesha*

**CERTIFICATE OF SERVICE**

I hereby certify, pursuant to Fed. R. App. P. 25(d)(2), that I electronically filed the foregoing with the Clerk of the United States Court of Appeals for the First Circuit using the appellate CM/ECF system. I certify that the parties in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF service.

Dated: July 26, 2023                                        _s/ Michael Bekesha_____